CONNELLY et ux. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9620.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 7, 1948.

Decided Jan. 24, 1949.

EDGERTON, Circuit Judge, dissenting in part.

Mr. A. Murray Preston and Mr. Caesar L. Aiello, both of Washington, D. C., with whom Mr. John Spalding Flannery, of Washington, D. C., was on the brief, for petitioners.

Mr. Meyer Rothwacks, of Washington, D. C., pro hac vice, by special leave of Court, with whom Mr. Lee A. Jackson, Special Asst. to the Atty. Gen., was on the brief, for respondent. Mr. Carlton Fox, Special Asst. to the Atty. Gen., and Mr. Ellis N. Slack, Attorney, Department of Justice, Mr. Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and Mr. Bernard D. Daniels, Special Attorney, Bureau of Internal Revenue, all of Washington, D. C., also entered appearances for respondent.

Before EDGERTON, CLARK and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This case is here upon a petition to review a decision of the Tax Court of the United States.

Petitioners are husband and wife. They filed joint income tax returns for 1943 and 1944 and claimed in each year as an exclusion from gross income $1,500 under authority of Section 22(b)(13)(A) of the Internal Revenue Code.[1] On the return for 1944, they also excluded $2,171.10 under authority of Section 29.22(a)-3 of Treasury Regulations 111. The Commissioner disallowed the exclusions, and the Tax Court, upon petition for redetermination, affirmed the disallowances.[2]

[1] As amended by Revenue Act 1945, § 141(a), 26 U.S.C.A.Int.Rev.Acts, p. 576.

[2] William I. Connelly, 1947, 8 T.C. 848.

The provision of the statute relating to the $1,500 exclusion was, in the years involved, as follows:

"Additional allowance for military and naval personnel.

"(A) In the case of compensation received during any taxable year and before the termination of the present war as proclaimed by the President, for active service as a commissioned officer (or a commissioned warrant officer) in the military or naval forces of the United States during such war, or, in the case of. a citizen or resident of the United States, as a member of the military or naval forces of any of the other United Nations during such war, so much of such compensation as does not exceed $1,500."

The provision of the Regulations relating to the claimed $2,171.10 is as follows:

" * * * The value of quarters furnished to the commissioned officers, chief warrant officers, warrant officers, and enlisted personnel of the Army, Navy, Coast Guard, Coast and Geodetic Survey, and Public Health Service, or amounts received by them as commutation of quarters, are to be excluded from gross income * * *."

■ The commutation of quarters problem is quickly solved. Petitioner[3] was furnished no quarters and received no commutation of quarters. The view of the Tax Court on that item was plainly correct.

■ The statutory allowance for naval personnel presents a different question. Prior to March 1, 1942, petitioner was employed in the Office of the Solicitor of the Department of Commerce. On that day, his group was transferred by Executive Order No. 9083[4] to the Coast Guard, and he with it. On the 19th of February, 1943, he was enrolled as a Lieutenant Commander in the Coast Guard Reserve, took the oath of office, and was placed on full-time active duty. He was officially notified: "While on active duty, you are vested with all the rights, privileges, powers and duties of a regular member of the Coast Guard Reserve of the same rank or rating, and you are subject to all laws and regulations for the govern-

ment of the Coast Guard and its Reserve." Thereafter, he was under authority of the Coast Guard twenty-four hours a day and was subject to its laws, regulations and orders and to naval disciplinary action for offenses committed. He was required to wear the Coast Guard uniform, was authorized to wear campaign ribbons and to use the postal franking privilege and the naval mess, received a naval personnel ration card, and had access to medical facilities of the Navy. According to an Office Memorandum issued by the Commandant of the Coast Guard on July 24, 1943, upon the subject:

"2. It is desired to impress upon all heads of offices, chiefs of divisions, and all regular and Reserve personnel that while engaged on active duty, as set forth and described in his certificate of temporary enrollment, a temporary member of the Reserve has the same power, authority, rights and privileges as members of the regular Coast Guard of similar rank, grade, or rating in the execution of the duty assigned to him. * * *

\* \* \* \* \* \*

"6. The attention of heads of offices and chiefs of divisions is invited to the fact that one of the principal reasons for the induction of civil service employees into the military establishment as temporary members of the Reserve was to obtain a homogeneous organization on a military basis and to eliminate differences in procedure and practices applicable to military personnel and civil service personnel engaged on exactly the same duty; and this memorandum is issued in order to effectuate that policy."

On the other hand, petitioner was not exempt from liability for training and service under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A. Appendix, § 301 et seq. During the period of his enrollment, he continued to receive for his services and the duties assigned to him compensation from congressional appropriations allocated to pay for civilian positions. Deductions for Civil Service retirement were continued, and petitioner was still governed by Civil Service regulations

---

[3] For simplicity's sake, we shall use that term to refer to the husband.

[4] 7 Fed. Reg. 1609, 50 U.S.C.A. Appendix, § 601 note.

for annual and sick leave and received overtime pay for services in excess of 40 hours a week.

The Commissioner of Internal Revenue disallowed the exclusion upon the ground that Commander Connelly was serving "in a civil status" and received his pay "from a civilian government payroll". The Tax Court held that he was not a commissioned officer.

The dispute arises on account of two features of the case. The duties which were performed by Commander Connelly's organization, and by him, as part of the Coast Guard, under naval command, during the war, were the same as, or similar to, the duties which they had performed in the Department of Commerce before the war and before their transfer and induction. This similarity, or identity, of duties seems to cause vast confusion. Because of it, Commander Connelly is said not to be an officer in the Coast Guard.

We do not see how similarity of duties can erase the distinction between civilian and military service. If it be attempted, an appalling confusion would arise. All sorts of questions would be presented as to the thousands of industrialists who were inducted or commissioned and assigned to operate plants, or to command patrol boats, and as to military personnel on duty at the Pentagon, and as to quartermaster and supply corps personnel dealing in clothing and equipment, and so on ad infinitum. We do not know why the Executive Department of the Government chose to translate each of scores of civilian operations into military and naval operations for the conduct of the war; and to induct into the military and naval services the accompanying personnel. And it is not our function to inquire why, although common sense indicates that total war is best conducted by military methods, means and men throughout. We know that it was done, and that is sufficient for our purposes.

We had a somewhat similar problem in Mitchell v. Cohen.[5] We there pointed out that the critical characteristics which differentiate civilian from military personnel have long been established.[6] The oath of office is the major incident. We need not repeat the extended discussion of that opinion. The Supreme Court defined ex-servicemen "for the purpose of [that] particular statute," as not including the particular persons there involved.[7] But the Court did not reject or question the standards which we there recited for the determination of status, as civilian or military, generally. Therefore, we adhere to those views for purposes other than that statute. The situation is not unlike the transformation of status from the bar to the bench. One minute a person has no power save his own influence and receives compensation for his legal opinions. Two minutes later he is invested with awful power over life and property, and the receipt of compensation for his opinions is a felony. The sole occurrence in those two minutes has been that he took an oath of office, pursuant to appointment and designation of duty.

It is our view that if the courts embark upon a process of separating military from non-military status for each and every recurrent purpose, upon the basis of an evaluation of time, pay, duty, privileges, etc., the process will be interminable and the ultimate result complete chaos. The enthusiasm, the panegyrics, and indeed the real and dire necessity, with which government translates personnel from civilian to military status for the purposes and needs of war, and the equal and opposite rescission of those attitudes when the war is over, are notorious in history and fiction. Of course, Congress may make differentiations and classifications almost as it pleases. But when Congress chooses not to make them, it is not for the courts to do so. When, for purposes of war, the Executive Department translates civilian duties into military duties and inducts personnel from civilian status to military status, and when Congress enacts legislation applying to military duties and military personnel, without further definition, the courts should simply

5 1947, 82 U.S.App.D.C. 83, 160 F.2d 915.

6 United States v. Tyler, 1882, 105 U.S. 244, 26 L.Ed. 985; United States v. Morton, 1884, 112 U.S. 1, 5 S.Ct. 1, 28 L.Ed. 613; Billings v. Truesdell, 1944,

321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; and other cases cited in Mitchell v. Cohen, supra.

7 1948, 333 U.S. 411, 421, 68 S.Ct. 518, 523, 92 L.Ed. 774.

accept those determinations. In such cases, the courts, in our view, should simply apply the long-established criteria—oath of office, military duty, and subjection to military discipline.

We are urged to ascertain an unexpressed intendment in the revenue act. The language of that act is direct and unadorned. It grants an allowance "In the case of compensation received * * * for active service as a commissioned officer (or a commissioned warrant officer) in the military or naval forces of the United States during such war". If Commander Connelly fits those clear requirements, he is entitled to the allowance. We think that no hindsight, subtlety or assumed mental reservation on the part of Congress should deprive him of it.

The Tax Court held the Commander to be not a commissioned officer because he was not commissioned by the President, but instead was inducted into office directly by the Coast Guard authorities. The Tax Court relied upon Section 6 of Title 14, U. S.C.A. But the Coast Guard Auxiliary and Reserve Act of 1941 [8] provides that the Commandant of the Coast Guard may confer upon these men the same ranks as are provided for the regular Coast Guard. By that statute, for the purposes of that war, the Commandant could confer upon certain persons the rank and status of a commissioned officer. He did so in the case of this petitioner. Commander Connelly had the authority, the title, the duties and the obligations of a commissioned officer. He was sworn in as such, by congressional authority. He was certainly serving and acting "as a commissioned officer", and that is what the tax statute requires.

The second feature which gives rise to the dispute, is the nature of petitioner's pay. He was on full-time active service, and he was compensated. But the Commissioner points to that part of the Coast Guard Auxiliary and Reserve Act (Sec. 207, supra note 8) which referred to the enrollment of "Government employees without pay other than the compensation of their civilian positions". He argues that petitioner, being in that category, did not receive "military pay". The revenue act does not use that term. Its term is "compensa-tion * * * for active service". To reach the conclusion that petitioner's compensation was not for service in the naval forces, we would have to hold that he worked full time for no compensation while, at the same time, he received full compensation for no work. The facts are that he was engaged in full-time active duty in the naval forces, and he received compensation. We think he received the compensation for the work.

It is our conclusion that this petitioner received compensation for active service as a commissioned officer in the naval forces of the United States during the war. That he was on such service as such an officer was by executive action pursuant to congressional authority. That his induction and status were not accomplished by the usual peacetime formalities, and that his pay was specified by a congressional enactment apart from other more general specifications of pay for military or naval service, are immaterial. It is not for the courts to tell the executive and legislative branches how they should have conducted the war. Petitioner is, therefore, entitled to the allowance of $1,500 as an exclusion from income for income tax purposes, under Section 22(b)(13)(A) of the Internal Revenue Code. The judgment of the Tax Court is, therefore, reversed on that point.

Reversed in part, affirmed in part, and remanded for further proceedings in accordance with this opinion.

EDGERTON, Circuit Judge (dissenting in part). I think the Tax Court was right. The petitioner has no claim to the statutory privileges of "ex-servicemen," Mitchell v. Cohen, 333 U.S. 411, 68 S.Ct. 518, and it seems to me still clearer that a man who was not commissioned was not "a commissioned officer"; also, that a man subject to draft was not a commissioned officer. Even if he had been a commissioned officer I would be unable, in view of the rule that tax exemptions are strictly construed, to say that the compensation of a man who did not receive a commissioned officer's pay but served "without pay other than the compensation of [his] civilian positions" was "received * * * for active service as a commissioned officer."

---

[8] Sec. 207, 55 Stat. 12, as amended, 56 Stat. 329, 990, 1021 (1942), 14 U.S.C.A. § 307.