COMMISSIONER OF INTERNAL REVENUE *v.*
CONNELLY ET UX.

No. 57. Argued October 21, 1949.—Decided November 7, 1949.

*Ellis N. Slack* argued the cause for petitioner. With
him on the brief were *Solicitor General Perlman, Assistant*
*Attorney General Caudle, Lee A. Jackson* and *Irving I.*
*Axelrad.*

*Caesar L. Aiello* argued the cause for respondents.
With him on the brief was *A. Murray Preston.*

MR. JUSTICE MINTON delivered the opinion of the
Court.

The question we have here is whether respondent Wil-
liam I. Connelly, hereafter referred to as the taxpayer,
is entitled to the $1,500 exclusion from gross income pro-

vided by § 22 (b) (13) (A) of the Internal Revenue Code.[1] The taxpayer claimed this additional allowance for the taxable years 1943 and 1944. The Commissioner disallowed the sum deducted. The Tax Court sustained the Commissioner, 8 T. C. 848, and the Court of Appeals reversed, one judge dissenting. 84 U. S. App. D. C. 260, 172 F. 2d 877. We granted certiorari. 337 U. S. 924.

On February 19, 1943, taxpayer was a civil service employee in the legal division of the Coast Guard. On that date he was enrolled as a lieutenant commander within one of the six classifications which constituted the temporary members of the Coast Guard Reserve.[2] His enrollment was under authority of the Coast Guard Auxiliary and Reserve Act which provided for the enrolling of "persons (including Government employees without pay other than the compensation of their civilian positions)." 55 Stat. 12, as amended, 56 Stat. 1021, 14 U. S. C. § 307. On April 24, 1944, he was reenrolled as a commander and his class was described as "Coast Guard Civil Service Employees."

After enrollment taxpayer performed duties identical with those which he had previously performed. At the time he was enrolled, his civil service rating was P–5. Later this rating was raised to P–6 and his rank was increased at the same time to that of commander. He received the same pay after enrollment that he had received as a civil service employee. He received overtime pay as a civil service employee, deductions were made from

[1] As amended by Revenue Act of 1945, § 141 (a), 59 Stat. 571:

"(13) Additional allowance for military and naval personnel.—

"(A) In the case of compensation received . . . for active service as a commissioned officer . . . in the military or naval forces of the United States . . . so much of such compensation as does not exceed $1,500."

[2] These classifications and the organization of the Coast Guard Reserve are detailed in *Mitchell* v. *Cohen,* 333 U. S. 411, 412–14.

his pay for civil service retirement, and he was subject to civil service regulations as to annual and sick leave. If he had been injured or killed, he would have received benefits as a civil employee of the United States. He was still subject to the Selective Training and Service Act. In the case of sickness or disease contracted while on active duty, taxpayer was entitled to the same hospital and medical care as members of the regular Coast Guard, but dental care was not included. While on active duty he was required to wear the uniform of and he received the courtesies due his rank. He was subject to the laws, regulations and orders of the Coast Guard and to disciplinary action.

It is apparent that taxpayer had a dual status. He had a limited military status with the rank of lieutenant commander and later that of commander. He had also the status of a civil service employee, carefully so limited and with all the privileges incident to such status. He was given just enough military status to enable him effectively to carry out his duties. All considerations of an economic character pertaining to his employment by the Government were related to his civil service status.

In *Mitchell* v. *Cohen,* 333 U. S. 411, we held that one employed in a department of the Federal Government as a civil service employee who was enrolled temporarily in the Volunteer Port Security Force of the Coast Guard Reserve and who worked part-time as a reservist without pay was not an "ex-serviceman" within the meaning of the Veterans' Preference Act. Looking to the legislative history of that statute, we found that the over-shadowing purpose of the Act was to favor those who had a real record of military service.

The Court of Appeals found in this case that by the application of "long-established criteria—oath of office, military duty, and subjection to military discipline" taxpayer had acquired a military status and was thus entitled to the exclusion. We agree that he had a military status

for some purposes. But the question for tax purposes is whether he received his pay in that status. To come within § 22 (b)(13)(A), he must have received his compensation "for active service as a commissioned officer." We understand this to mean that if taxpayer received his pay *as a* commissioned officer, he would be entitled to the exclusion. It seems equally plain that if he received his pay *as a* civil service employee and served without military pay and allowances, he is not entitled to the claimed exclusion.[3] As in the *Cohen* case, the emphasis of the statute is on a military and not on a civilian status.

And it is clear that taxpayer received his compensation in a civilian status. As noted, § 307 of the Coast Guard Auxiliary and Reserve Act provided for the enrolling of "persons (including Government employees without pay other than the compensation of their civilian positions)." The Committee on Merchant Marine and Fisheries referred to the amendment by which the parenthetical phrase was added to the statute as being "advisable to clarify this authority [enrollment of temporary members without the pay of their military rank] and resolve any doubt of its applicability to Government employees by specifically providing for temporary membership in the Coast Guard Reserve of Government employees without military pay but with continuance in their civilian positions and the receipt of the compensation thereof."[4]

From the date of the enactment of the enrollment statute there seems to have been no deviation from the view

---

[3] See Judge Edgerton, dissenting in part, below:

". . . I would be unable, in view of the rule that tax exemptions are strictly construed, to say that the compensation of a man who did not receive a commissioned officer's pay but served 'without pay other than the compensation of [his] civilian positions' was 'received . . . for active service as a commissioned officer.'" 84 U. S. App. D. C. at 263, 172 F. 2d at 880.

[4] H. R. Rep. No. 2525, 77th Cong., 2d Sess., 3 (1942). The Committee added that the amendment "would obviate any possible

that the taxpayer was to be paid as a civil service employee and not as a commissioned officer. His pay came from congressional appropriations allocated to civilian positions. His pay was at the civil service scale for his grade, with overtime pay and appropriate deductions for civil service retirement. His continuing civilian status is underlined by his receipt of a civil service promotion, from which his military promotion resulted. Indeed, the taxpayer's certificate of disenrollment described the duty performed as "Chief of Admiralty and Maritime Section having civil service status, receiving civilian but no military pay, and holding rank of Commander as a Temporary Member of the Coast Guard Reserve."

The Court of Appeals ignored the status in which taxpayer was compensated and gave effect to his military status which was provided only to facilitate the performance of his duties in wartime.[5] Taxpayer's rank was for the purpose of getting the job done, and not for the purpose of receiving compensation.

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

---

impairment of the right of such employees to continue to receive the compensation of their civilian positions for the entire period of their performance of active Coast Guard duty as such temporary members. There will be little, if any, change in the nature of their duties after enrollment."

[5] Office Memorandum No. 13–43 issued by the Commandant of the Coast Guard on July 24, 1943, states:

"6. The attention of heads of offices and chiefs of divisions is invited to the fact that one of the principal reasons for the induction of civil service employees into the military establishment as temporary members of the Reserve was to obtain a homogeneous organization on a military basis and to eliminate differences in procedure and practices applicable to military personnel and civil service personnel engaged on exactly the same duty . . . ."