## THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73138. Filed June 29, 1961.

*William P. Tilton, Jr., Esq., Charles B. McInnis, Esq., G. Kibby Munson, Esq., Roger H. Muzzall, Esq., John J. Schmidt, Esq.,* and *Jonathan C. Gibson, Esq.,* for the petitioner.

*Don S. Harnack, Esq., Cornelius C. Shields, Esq.,* and *Theodore W. Hirsh, Esq.,* for the respondent.

TIETJENS, *Judge:* The respondent determined deficiencies in income tax for the calendar years 1948 and 1949 in the respective amounts of $1,216,173.51 and $1,377,204.78. The sole issue remaining for decision is whether the respondent erred in determining that the petitioner should have accrued additional interest income from a subsidiary in those years.

The petitioner's corporation income tax returns for 1948 and 1949 were filed with the collector of internal revenue at Wichita, Kansas.

### FINDINGS OF FACT.

The stipulated facts are found accordingly and the exhibits to the stipulation are incorporated by this reference.

The Atchison, Topeka and Santa Fe Railway Company, herein referred to as Atchison, is a corporation organized under the laws of Kansas with its principal office in Chicago, Illinois.

Gulf, Colorado and Santa Fe Railway Company, herein referred to as Gulf, is a corporation organized under the laws of Texas with its principal office in Galveston, Texas.

At all pertinent times Atchison and Gulf were engaged in the railroad business and were class I common carriers by railroad subject to regulation by the Interstate Commerce Commission, herein referred to as the ICC. Atchison operated approximately 9,100 miles of railroad in Illinois and California and certain other States exclusive of Texas. Gulf operated approximately 2,100 miles of railroad in Texas, Louisiana, and Oklahoma.

All the capital stock of Gulf, except for directors' qualifying shares, was owned by Atchison.

During 1948 and 1949 certain officers of Atchison were also officers of Gulf.

At all pertinent times Atchison and Gulf were required to maintain their accounts in accordance with the system of accounts prescribed by the ICC. They kept their books and filed their Federal income tax returns on an accrual basis and for calendar years. For the years 1924 through 1945, consolidated returns were filed covering the Santa Fe System, herein referred to as the System, which included Atchison and Gulf and other corporations owned by Atchison. For the years 1946 through 1949 separate returns were filed by Atchison and by Gulf and other corporations of the System.

Under a general mortgage dated in 1924 Gulf issued to Atchison bonds in the amount of $42,310,000 bearing interest at 6 percent, amounting to $2,538,600 annually. These were pledged by Atchison under its mortgage as partial security for its bonds maturing in 1995. Gulf was also indebted to Atchison in varying amounts represented by a certificate of indebtedness. From 1930 to the end of 1940 this was in the amount of $4 million. In 1941 this was reduced to $2,080,050.57 and remained at this amount until 1953. Atchison also made capital advances to Gulf. The amount of Gulf's debt to Atchison at the end of the years 1943 to 1949 and interest due each year were as follows:

| Year | Yearend total debt | Interest due in year |
|---|---|---|
| | Thousands of dollars | |
| 1943 | $44,810 | $2,579 |
| 1944 | 45,386 | 2,586 |
| 1945 | 44,854 | 2,614 |
| 1946 | 45,024 | 2,566 |
| 1947 | 44,851 | 2,624 |
| 1948 | 56,049 | 2,597 |
| 1949 | 56,688 | 3,156 |

Gulf was obligated to pay rental for the use of railroad properties owned but not operated by certain other subsidiaries of Atchison. The amount of rental was determined in part by the amount of interest accruing on bonds of the lessors held by Atchison and on advances to the lessors by Atchison. A portion of the rental, based upon the interest obligation of the lessors, was paid over to Atchison by Gulf for account of the lessors and was recorded by Atchison as interest income.

From 1924 until 1953 Gulf charged all interest owed, whether or not paid, to an account entitled "Interest on Funded Debt" or to an account entitled "Interest on Unfunded Debt," herein referred to

collectively as Interest on Debt account and charged rentals owed to an account entitled "Rent for Leased Roads and Equipment."

In each of the years 1928, 1929, and 1930 Gulf earned net income in excess of all current interest and rental charges and paid in full the current interest due from it to Atchison in amounts in excess of $3 million each year. In these years Atchison recorded such interest to an account entitled "Income from Funded Securities" or to an account entitled "Income from Unfunded Securities," herein referred to as the Income from Securities account, and by setting up the same amounts as a current asset in an account entitled "Interest and Dividends Receivable."

In these years the amounts of current interest were included in the consolidated tax returns as mutually offsetting intercompany items and were not eliminated either as expense or income in determining consolidated taxable net income.

In each of the years 1931 through 1941 Gulf earned less than its current interest expense. Gulf paid to Atchison, on account of interest, its earnings per books for 1931 and for 1932 before current interest expense, and also paid the amount of certain credits to profit and loss in 1931.

In 1931 and 1932 Atchison included the amount of current interest due it from Gulf as Income from Securities and as Interest and Dividends Receivable. At the end of each year the difference between the amount of Gulf's earnings, plus credits to profit and loss, and the total of the current interest was transferred by Atchison to an account entitled "Deferred Income–GC&SF Ry. Co." After such transfer that portion of Income from Securities account attributable to interest on Gulf indebtedness included the earnings of Gulf plus the credits referred to. The amount of Gulf's earnings for 1932 was applied by Atchison to the earliest matured installment of unpaid interest which was for the year 1931.

In 1933 and in each year thereafter through 1941 Gulf made no payment to Atchison on account of interest. In each of the years 1933, 1934, 1935, and 1940 Gulf had a loss per books after rentals but before interest. In each of the years 1936 through 1939 and in 1941 Gulf had earnings per books after rentals but before interest and such earnings were less than the amount of current interest.

In 1934 Atchison's book accounting was changed. In the period 1934 through 1948 entries of interest due from Gulf were made directly to the Deferred Income account, thereby eliminating the yearend adjustment such as was made for 1931 and 1932.

In the preparation of the consolidated Federal income tax returns for the years 1931 and 1932, the excess of the expense taken from the Interest on Debt account of Gulf over that portion of the income taken

from the Income from Securities account of Atchison which represented Gulf interest, was eliminated in determining consolidated taxable net income. To the extent that the interest income of Atchison and the interest expense of Gulf were mutually offsetting, they were not eliminated either as expense or income in determining consolidated taxable net income.

In the preparation of the consolidated Federal income tax returns for the years 1933 to 1941, inclusive, the total amount of the Interest on Debt account on the books of Gulf was eliminated in computing consolidated taxable net income. No part of Atchison's Income from Securities account included Gulf interest during that period.

At the end of 1941, interest owed to Atchison by Gulf but unpaid exceeded $27 million.

In 1942 and in each year through and including 1945, Gulf earned net income in excess of its current interest charges.

In 1942 and in each year thereafter through and including 1945, Gulf regularly paid to Atchison, on account of interest, its net income after rentals and before current interest.

The amounts so paid were transferred by Atchison from the Deferred Income–GC&SF Ry. Co. account to the Income from Securities account at the end of each year 1942–1945, inclusive, and were applied by Atchison to the earliest matured installment of unpaid interest.

In the preparation of the consolidated Federal income tax returns for the years 1942 to 1945, inclusive, the portion of Atchison's Income from Securities account which represented interest on Gulf indebtedness and the total amount of Gulf's Interest on Debt account were both eliminated in determining consolidated taxable net income.

In 1946 and in each year thereafter through and including 1953, Atchison and Gulf filed separate Federal income tax returns.

In 1946, Gulf had earnings per books after rental and before current interest expense in an amount less than such interest. For the year 1946, Gulf paid to Atchison on account of interest, the amount of $1,534,907.65, its net income computed before current interest but after rentals. Such amount was transferred by Atchison from the Deferred Income–GC&SF Ry. Co. account to the Income from Securities account and was applied to the earliest matured installment of unpaid interest.

In its tax return for 1946, Atchison included as the total amount of interest income attributable to Gulf indebtedness the amount of such earnings. In its tax return for 1946, Gulf included as a deduction the current interest expense, which, together with other deductions, produced a net operating loss, per tax return. In 1947, Atchison, as common parent of the affiliated group, filed claim for refund of 1944

taxes on account of carryback to the year 1944 of such net operating loss.

At the end of 1946, interest owed to Atchison by Gulf but unpaid amounted to $20,134,426.04.

At the end of 1947, the indebtedness on bonds, capital advances, and certificate of indebtedness owed by Gulf to Atchison was $44,851,-099.37, the amount of interest payable for the year 1947 was $2,624,-314.47, and the amount due for rentals for 1947 was $1,031,177.23. These figures do not include interest arrearages.

In November 1947, the general auditor of Atchison addressed a memorandum to F. G. Gurley, president of both Atchison and Gulf, stating:

Your memorandum of November 14th in the last paragraph of which you refer to the matter of increasing equipment rental charges against the GC&SF Ry Co.

On the basis of actual figures to October 31 following is an estimate of the income of the GC&SF for the year 1947 (1) on present basis and (2) assuming an increase in equipment rentals of $1,202,000:

|  | Present Basis | With Increased Equipt. Rents |
|---|---|---|
| Net income before interest and Federal taxes | $5,744,000 | $4,542,000 |
| Interest charges for current year | 3,593,000 | 3,593,000 |
| Income subject to Federal tax | 2,151,000 | 949,000 |
| Income tax at 38% | 817,000 | 361,000 |
| Net income available for payment of prior years' interest | 1,334,000 | 588,000 |
| Duplicate tax to AT&SF | 506,000 | 223,000 |

I think it would be unwise to increase the equipment rental charges against the GC&SF as a means of avoiding the duplicate tax on its income for the following reasons: (1) It would be necessary to continue the increased rentals in subsequent years. In years in which the GC&SF fails to earn its interest charges and separate tax returns are filed there would be a tax loss resulting from the shift of charges from the AT&SF to the GC&SF. With its present financial set-up the GC&SF will ordinarily fail to earn its interest charges. (2) It would place an additional brake upon the ability of the GC&SF to earn its interest and recover its solvency. (3) The amount of additional rental in 1947 would not be sufficient completely to avoid the duplicate tax, since the duplicate tax would only be reduced from $506,000 to $223,000.

The duplicate tax on GC&SF income arises only in years when the GC&SF has income in excess of its current interest charges and separate income tax returns are filed. In the past we have been able to avoid the duplicate tax by filing consolidated returns in which inter-company interest is eliminated. During the years beginning with 1942 when there has been the two per cent penalty on consolidated returns this course has been justified by other factors such as the advantage of invested capital and losses of losing companies. For 1947 that course is not available because the two per cent penalty is greater than the amount of the duplicate tax and other savings we can accomplish by filing consolidated returns. In 1946 the GC&SF had a deficit. In 1947 it will have surplus income largely because of the heavy movement of wheat for

export. That movement may not be repeated in 1948 and if not the GC&SF probably will again have a deficit. There is a prospect that the two per cent penalty on consolidated returns will be removed in the 1948 revenue bill. Removal has been urged by practically all who have made recommendations to Congress and no objection has appeared so far. The problem of this duplicate tax therefore is probably of only one year duration.

There is an alternate method by which we may be able completely to avoid this duplicate tax of $506,000, namely: by having the GC&SF pay only its current year's interest and have the AT&SF take up in its income only that amount, leaving the surplus in the hands of the GC&SF. Under this method there would be no change in the System income account or balance sheet.

This method involves some risk because it has been the practice for many years for the GC&SF to pay and the AT&SF to take up in its income the total income of the GC&SF and to apply any excess over current year's interest to the payment of past due interest of prior years. The risk is that the Bureau of Internal Revenue may insist that the AT&SF take up as interest income the full amount earned by the GC&SF in accordance with the past practice. In the event the issue would be raised our defense would be that the GC&SF is traditionally a losing company; it is insolvent with a deficit of more than $20,000,000; it had a deficit in 1946 and for many years prior to the war period; it earned a little surplus in 1947 because of the extraordinary movement of wheat for export; the prospects are it will again lose money in 1948 and for an indefinite period thereafter (by the time the 1947 tax returns are audited the facts will be known); prudent management dictated retention of the 1947 surplus as a partial recoupment of the 1946 loss and a cushion against a probable loss in 1948; since the company is already insolvent with a large amount of interest in default, failure to pay interest up to the last dollar earned could not worsen its position.

If this defense proves good all is well, if it fails we shall have to pay the duplicate tax with interest. Except for the interest we would be no worse off than if we made no effort to avoid it. With your concurrence we will proceed accordingly.

On December 23, 1947, Gurley replied to the general auditor as follows:

In view of your explanation of the Gulf Lines income tax situation, we will not disturb the present basis of charging equipment rentals against the GC&SF. As to the alternate method, you have my concurrence in the proposal to allow the GC&SF to retain its surplus earnings in 1947 rather than applying them to back interest due to the AT&SF. There is no good business reason for taking the Gulf's last dollar under circumstances where it operates normally at a loss and has prospective needs of its own.

Under date of January 8, 1948, Gurley wrote the vice president and general manager of Gulf, stating:

During the year 1947 the Gulf Company will have income in excess of its current charges for rentals and interest, resulting largely from the movement of wheat to the Gulf ports. The company suffered a deficit in its operations for 1946 and there is likelihood it will again lose money in 1948.

The cash balance of the company, including the balance in its "Current Account" with the Atchison Company, is insufficient to meet all year end payments without seriously depleting its working fund. The higher costs of operation and the probability of back wage payments make it necessary to maintain a somewhat larger working fund balance than heretofore has been required.

In view of these conditions we will pay the rentals for leased lines which become due at the end of the year and will pay the Atchison Company interest on bonds, advances and certificate of indebtedness accrued for the year 1947 and will not at this time make any payment on past due interest of prior years.

I am sending copy of this letter to Auditor Lovely for his guidance in making the appropriate accounting.

The decision to forego further collection of interest arrearages from Gulf was based in part on Gulf's weak financial position and poor record of earnings, its low working capital, planned improvements calling for substantial outlays, contingent liabilities for reparation claims filed by the United States, and prospective wage increases including retroactive adjustments.

In 1947, Gulf had an inadequate entry into Dallas. Trains from the north for Dallas passed through Fort Worth (west of Dallas) to Cleburne (south of Fort Worth) and thence proceeded northeasterly to Dallas. The management considered it essential to secure or construct a line from Fort Worth, or from a point north of Fort Worth into Dallas, to meet competition. It was expected that Gulf would need money for this, as well as for installation of automatic block signals and other betterments and maintenance.

The decision to have Gulf pay current interest only and to make no payment on interest arrears was not thereafter reviewed. This policy was continued in effect until July 1953 when Gulf's bonds matured. Letters similar to that of January 8, 1948, quoted above, were sent to Gulf's general manager each year.

In 1947, Atchison transferred from the Deferred Income–GC&SF Ry. Co. account to the Income from Securities account, Gulf's current interest obligation for 1947 in the amount of $2,624,314.47. This amount was paid by Gulf and was applied by Atchison in satisfaction of the current interest obligation of Gulf for the year 1947. Gulf recorded the same amount as an expense in its Interest on Debt account. Atchison included in its separate Federal income tax return for the taxable year 1947, interest income of $3,655,491.70, representing the sum of $2,624,314.47 (similarly deducted by Gulf in its 1947 Federal income tax return as interest expense) and $1,031,177.23 (recorded and deducted by Gulf on its books and Federal income tax return for 1947 as rental expense).

On or about November 2, 1948, an application was filed with the Interstate Commerce Commission requesting approval of a proposed merger of Gulf with eight other corporations wholly owned by Atchison. The application for merger was approved on December 23, 1948, and was consummated a short time thereafter. The ICC reported that the effect of the merger would be to reduce the total capitalization of the System by $5,135,300 and correspondingly increase the net worth of Gulf. Pursuant to the merger Gulf assumed bonds of the

other companies in the face amount of $9,901,000. In 1949 part of this debt was transferred to open account indebtedness by cancellation and retirement of some of the bonds.

At the end of 1948 the indebtedness of Gulf to Atchison on bonds, capital advances, and certificate of indebtedness was $56,049,152.51, the interest payable for 1948 was $2,597,199.92, and rental due for 1948 was $1,030,666.83. These figures do not include interest arrearages.

In 1948, Gulf's earnings per books were $5,145,706.99 after rentals and before current interest expense of $2,597,199.92, or a net income of $2,548,507.07.

In 1948, Atchison transferred from the Deferred Income–GC&SF Ry. Co. account to the Income from Securities account, Gulf's current interest obligation for 1948 in the amount of $2,597,199.92. This amount was paid by Gulf and was applied by Atchison in satisfaction of the current interest obligation for the year 1948. Gulf recorded the same amount as an expense in its Interest on Debt account. Atchison included in its separate income tax return for the taxable year 1948, interest income of $3,627,866.75 representing the sum of $2,597,199.92 (similarly deducted by Gulf in its 1948 Federal income tax return as interest expense) and $1,030,666.83 (recorded and deducted by Gulf on its books and Federal income tax return for 1948 as rental expense).

In 1948 and 1949 Atchison made further capital advances to Gulf in the respective amounts of $1,297,053 and $6,189,947.

In the year 1949, Atchison's book accounting was again changed with respect to interest due from Gulf. During the period 1949 to 1953, inclusive, monthly entries of current interest owing to Atchison by Gulf were made directly to the Income from Securities account to the extent that Gulf's current earnings were sufficient to cover the monthly-cumulative amount of current interest due on the Gulf indebtedness to Atchison. To the extent that Gulf's current earnings were not sufficient to cover the monthly-cumulative amount of current interest due on the Gulf indebtedness to Atchison, an entry was made to the Deferred Income–GC&SF Ry. Co. account. By the end of each of the above years, the yearend total of current interest due Atchison with respect to the Gulf indebtedness was included in the Income from Securities account, and no part of the yearend balance of the Deferred Income–GC&SF Ry. Co. account represented current interest due from Gulf for each of such years.

At the end of 1949 the indebtedness of Gulf to Atchison on bonds, capital advances, and certificate of indebtedness was $56,687,986.33, the interest payable for 1949 was $3,155,750.48, and rental due for 1949 was $125,718.89. These figures do not include interest arrearages.

In 1949, Gulf's earnings per books were $5,903,240.20 after rentals and before current interest expense of $3,155,750.48, or a net income of $2,747,489.72.

In 1949, Gulf paid to Atchison the amount of $3,155,750.48, which amount was included in Atchison's Income from Securities account. This amount was applied by Atchison in satisfaction of Gulf's current interest obligation for the year 1949. Atchison included in its separate Federal income tax return for the taxable year 1949, interest income of $3,281,469.37, representing the sum of $3,155,750.48 (recorded and deducted by Gulf on its books and in its 1949 Federal income tax return as interest expense) and $125,718.89 (recorded and deducted by Gulf on its books and in its 1949 Federal income tax return as rental expense).

Following World War II, Gulf faced increased competition from other types of carriers, trucks, buses, automobiles, and airlines as well as transport of oil by pipeline.

Gulf's freight traffic included a considerable tonnage of wheat, flour, and crude petroleum. There was an unusually large amount of wheat and flour hauled by Gulf in the years 1945 to 1952. The tonnage of petroleum hauled by Gulf was unusually large in 1947 and 1948. Part of this oil was from a new field and after a pipeline was completed the movement of its oil by rail ceased. It was foreseeable in 1947 and 1948 that this reduction of oil freight would occur.

At the end of 1947 the petitioner and Gulf were faced with a contingent liability for possible refunds to the United States Government. The report of the petitioner to its stockholders for 1947 stated:

In a series of complaints filed with the Interstate Commerce Commission during the past year, the Department of Justice alleges that the railroads, including this Company, collected unreasonable freight charges for the transportation of various classes of government wartime traffic, and seeks refunds which it estimates at *two billion dollars*.

\*      \*      \*      \*      \*      \*      \*

Should the Department of Justice prevail in its contentions, the railroad industry and the national economy will suffer irreparable damage, because the total net working capital of all Class I railroads in the United States is insufficient to pay even a half of the refunds sought.

\*      \*      \*      \*      \*      \*      \*

Obviously, these complaints threaten the solvency of many railroads. The Santa Fe will join with other railroads in vigorously defending the reasonableness of the rates under attack when the complaints come up for hearing before the Commission.

Petitioner's report to stockholders for the year 1948 further stated:

Complaints filed by the Government with the Interstate Commerce Commission alleging that the Railroads, including this Company, collected unreasonable freight charges for the transportation of various classes of Government

wartime traffic, continue to present a threat to the solvency of many roads, as stated in last year's report * * *

Petitioner's report to stockholders for the year 1949 added:

It has been estimated that these complaints in the aggregate involve more than $100 million, exclusive of interest, for this Company. The net current assets of the Santa Fe Railway System, excluding materials and supplies, amounted to less than $59 million at December 31, 1949.

The ICC dismissed the reparations suits in 1955.

There were a number of demands made in 1947 and 1948 upon Gulf, as well as other railroads, for wage increases and several agreements were negotiated in 1947, 1948, and 1949 for increases effective in those years.

In the years 1943 through 1950, Gulf had the following working capital (current assets minus current liabilities):

| Year | Amount (Thousands of dollars) | Year | Amount (Thousands of dollars) |
|---|---|---|---|
| 1943 | $1,466 | 1947 | $1,098 |
| 1944 | 1,908 | 1948 | 3,592 |
| 1945 | 1,051 | 1949 | 6,341 |
| 1946 | 1,026 | 1950 | 8,509 |

In the years 1943 through 1950, Gulf had the following railway operating revenues:

| Year | Railway operating revenues (Thousands of dollars) | Year | Railway operating revenues (Thousands of dollars) |
|---|---|---|---|
| 1943 | $37,559 | 1947 | $42,524 |
| 1944 | 40,688 | 1948 | 52,292 |
| 1945 | 41,322 | 1949 | 49,159 |
| 1946 | 33,609 | 1950 | 51,612 |

The Current Account 715 on Atchison's books represents cash of Gulf held by Atchison. On December 31 of 1947, 1948, and 1949, Gulf had the following current account balances:

| 1947 | ($622, 620) |
|---|---|
| 1948 | ( 761, 413) |
| 1949 | 3, 078, 789 |

The general balance sheets for Gulf as of December 31 in 1947, 1948, and 1949, as submitted to the ICC, show the following (in thousands of dollars):

| | 1947 | 1948 | 1949 |
|---|---|---|---|
| Assets: | | | |
| Investments | $60, 945 | $72, 293 | $73, 029 |
| Current assets | 8, 089 | 11, 243 | 12, 778 |
| Total assets | 69, 414 | 84, 029 | 86, 209 |
| Liabilities: | | | |
| Total stock | 15, 657 | 15, 665 | 15, 665 |
| Funded debt | 42, 310 | 52, 211 | 46, 660 |
| Amounts payable to affiliates | 22, 676 | 23, 973 | 30, 163 |
| Current liabilities | 6, 991 | 7, 651 | 6, 438 |
| Unearned surplus | 4, 296 | 4, 296 | 4, 296 |
| Earned surplus | | | |
| Debit balance | 23, 343 | 20, 749 | 17, 969 |

The balance sheets indicate an insolvency of Gulf, per books, to the extent of $3,390,133 at the end of 1947 and $788,529 at the end of 1948 and a solvency of $1,992,096 at the end of 1949.

Atchison's original corporation income tax returns for 1948 and 1949 show the following (in thousands of dollars):

|  | 1948 | 1949 |
|---|---|---|
| Gross receipts | $441,544 | $401,997 |
| Cost of operations | 300,046 | 280,586 |
| Gross profit | 141,499 | 121,412 |
| Interest on loans | 44 | 58 |
| Total income | 155,865 | 135,247 |
| Rentals paid | 2,787 | 3,295 |
| Interest | 8,577 | 8,481 |
| Taxes | 24,848 | 25,970 |
| Total deductions | 56,445 | 59,858 |
| Net income | 99,420 | 75,389 |
| Income tax due | 37,587 | 28,427 |

Gulf's corporation income tax returns for 1948 and 1949 show the following (in thousands of dollars):

|  | 1948 | 1949 |
|---|---|---|
| Gross receipts | $52,540 | $49,282 |
| Cost of operations | 40,247 | 36,732 |
| Gross profit | 12,293 | 12,551 |
| Total income | 12,881 | 13,183 |
| Interest | 2,600 | 3,159 |
| Taxes | 2,437 | 2,615 |
| Total deductions | 8,332 | 8,578 |
| Net income | 4,549 | 4,605 |
| Income tax due | 1,728 | 1,745 |

In 1950, 1951, and 1952 Gulf accrued current interest and rental expense, Atchison accrued the same amounts as interest income, and the separate tax returns included the same amounts as expense to Gulf and income to Atchison.

In the years 1950 to 1953 Atchison made further capital advances to Gulf amounting to more than $4 million.

On August 25, 1953, the unpaid interest arrearages, in the amount of $20,134,426.04, were gratuitously forgiven by Atchison, pursuant to a resolution by Atchison's board of directors.

In December of 1953, Atchison recorded the forgiveness of Gulf's unpaid interest by a debit entry to the Deferred Income–GC&SF Ry. Co. account and by a credit entry to the Interest and Dividends Receivable account.

As of July 1, 1953, Gulf executed a general income mortgage and issued thereunder to Atchison bonds maturing October 1, 1995, in the amount of $46,659,000 in satisfaction of the $42,310,000 of bonds issued prior to 1932 and $4,349,886.08 of lessor companies' bonds assumed December 31, 1948, the new bonds bearing interest at the rate of up

to 6 percent per annum, payable if earned.  These bonds were pledged under Atchison's mortgages, having been substituted, by consent of the trustee, for the bonds maturing July 1, 1953.

## OPINION.

In the taxable years 1948 and 1949 the petitioner, an accrual basis taxpayer, accrued as interest income from its subsidiary, Gulf, the amounts of current interest due the parent on the obligations of the subsidiary.  The subsidiary had earnings in excess of these amounts.  The respondent determined that the petitioner should have accrued as additional interest income the amounts of Gulf's earnings in excess of current interest.  (The exact amounts are stipulated and for convenience we shall refer herein to approximate figures.)

As of the end of the year 1931 Gulf was indebted to Atchison to the extent of $48 million and in the period 1931 to 1948 its annual interest costs were some $2.6 million.  Gulf also rented certain track mileage from subsidiaries of Atchison for which the rentals approximated $1 million annually.

In 1931 and 1932 Gulf's earnings after rentals were less than the amounts due for current interest.  Atchison collected from Gulf the amount of its net earnings.  For the years 1933 through 1941 Gulf had losses or low earnings and made no payment on account of interest.  In the years 1942 through 1945 Gulf's earnings were in excess of its current interest obligation and Gulf paid Atchison the full amount of such earnings.  In 1946 Gulf's earnings were less than the current interest due and the amount of such earnings was paid to Atchison.  In 1947 and in 1948 and 1949 Gulf had earnings in excess of current interest and paid to Atchison only the amount of current interest.

The books of both parent and subsidiary were maintained on an accrual basis and in accordance with regulations of the ICC.  Gulf regularly accrued as interest expense the amounts becoming due upon its obligations to Atchison, whether or not paid.  Atchison at first accrued as income the interest due, but in later years when Gulf was unable to pay, the amount due was recorded in a deferred income account thereby showing the amount as an asset on the balance sheet.  At the end of 1941 the accumulated arrearages exceeded $27 million.  In the years 1942 to 1946 Atchison charged the current interest due from Gulf to the deferred income account, collected from Gulf the full amount of its earnings, and took such amounts into income as interest, crediting the deferred income account.  The amounts so collected were applied against the earliest installments of unpaid interest.  At the end of 1946 the arrearages had been reduced to about $20 million.  In 1947 and later years this accounting procedure was changed, and

Atchison accrued as interest income only the amount of current interest earned, and collected only that amount from Gulf. The respondent takes the position that Atchison must also accrue as interest income in 1948 and 1949 the additional earnings to apply against interest arrearages. If applied against the oldest arrearages, these would be amounts due for 1939, 1940, and 1941.

The petitioner and its subsidiaries filed consolidated returns for all the pertinent years through 1945 and separate returns for 1946 and later years. In the consolidated returns the intercompany transactions were treated as offsetting items through 1930, but thereafter the excess of interest expense on Gulf's books over interest income on Atchison's books on account of Gulf interest was eliminated in determining consolidated taxable net income. In the separate returns for 1946 Gulf claimed the current interest expense as a deduction; Atchison treated as interest income the amount of Gulf's earnings before interest, which amount was less than current interest. In the 1947 returns Gulf claimed as expense and Atchison returned as income the same amounts (representing current interest and rentals). The same procedure was followed in the returns for the taxable years 1948 and 1949 and thereafter until 1953 when the arrearages were formally forgiven.

Under recognized principles of accrual accounting, even though a debtor accrues as interest expense its obligation for interest owed but not paid, the creditor is not required to accrue as interest income amounts due it if there is no reasonable expectancy of collecting such interest. *North American Oil* v. *Burnet*, 286 U.S. 417 (1932) ; *Burnet* v. *Logan*, 283 U.S. 404 (1931).

There is some dispute over the question whether the interest income for 1939, 1940, and 1941 was accrued by Atchison in those years, and hence should not again be accrued as income in 1948 and 1949. The argument is that Atchison, in effect, accrued the interest year by year as Gulf accrued the same amounts as expense and that the transfer of the unpaid amounts to the deferred income account was a shortcut to save bookkeeping entries since collection was foreseen to be impossible. The elimination of Gulf's interest expense as a deduction in computing consolidated taxable income had the same effect on the consolidated income as if Atchison had accrued the same amount as interest income and both offsetting items were allowed to stand in the consolidated returns. If the bookkeeping method was erroneous, that fact would not be controlling. *Doyle* v. *Mitchell Brothers Co.*, 247 U.S. 179 (1918) ; *American Central Utilities Co.*, 36 B.T.A. 688 (1937).

We believe it unnecessary to resolve the issue as to whether interest income for the earlier years was or was not accrued by Atchison as we conclude on the merits that the respondent's determination was erroneous.

In *Combs Lumber Co.*, 41 B.T.A. 339 (1940), stockholders gave to their corporation demand notes which provided for interest, but with the understanding that no interest was to be paid. We held that no liability for interest was created and the corporation was not required to accrue interest income. Our conclusion was reached because it was evident that the parties never intended to create a liability for interest, hence there was no right to receive interest which would justify accrual.

In *Society Brand Clothes, Inc.*, 18 T.C. 304 (1952), a subsidiary owed a current open account to its parent corporation, both being on an accrual basis. The current liabilities of the subsidiary exceeded its current assets and the deficits exceeded the capital stock account. By arrangement the subsidiary in place of the open account gave a 10-year note providing for interest at 5 percent. The officers of the two corporations agreed orally that no interest would be due and payable until such time as the two companies should agree that the financial condition of the subsidiary would permit such payment. We regarded the oral agreement as a valid authority for the non-accrual by the parent of interest from the subsidiary until such a later agreement. The reason given by the taxpayer for the arrangement in that case was that the financial condition of the subsidiary made it desirable to improve its credit rating.

In *Oregon Pulp & Paper Co.*, 34 T.C. 624 (1960), we held that interest should be accrued by a parent corporation on an interest-bearing note of a solvent subsidiary until the date of corporate action forgiving the interest. The respondent recognized in that case that no interest was accruable for periods after such action.

The petitioner contends that the decision of Atchison's president in 1947 and 1948 stated in the Findings of Fact had the effect of terminating Gulf's obligation to pay interest arrearages, and, therefore, under the rule of *Society Brand Clothes, Inc., supra*, the petitioner was not obliged in 1948 and 1949 to accrue earnings of Gulf to be applied in reduction of such arrearages. It is clear that this decision was one of policy for all future years and was not reviewed or reconsidered, and that the formal forgiveness of the arrearages in 1953 was in confirmation of this decision.

The respondent contends that the arrangement foregoing collection of arrearages was motivated solely by the purpose of tax avoidance and that a decision of the issue in favor of the petitioner would give it an unwarranted tax advantage.

Taxpayers may be intelligently tax conscious and give consideration to the tax effects of transactions. They need not choose a course of action which will best pay the Treasury and are under no duty to increase their taxes. See Paul, Taxation in the United States 661. Also see *Gregory* v. *Helvering*, 293 U.S. 465 (1935); *United States* v.

*Cumberland Publ. Serv. Co.*, 338 U.S. 451 (1950). We have said that a taxpayer is not obliged to pursue a course of action giving rise to a greater tax liability if another is open which will give rise to a lesser. *Fruit Belt Telephone Co.*, 22 B.T.A. 440 (1931), acq. X-2 C.B. 25.

In the filing of the consolidated returns for 1939, 1940, and 1941, the income of both Atchison and Gulf was taxed in full. Interest expense was then accrued by Gulf, but Atchison treated the interest due it as an account receivable. Gulf derived no benefit taxwise from the accrual, nor did the System. The interest for such years was never collected by Atchison and now that it has been formally forgiven it never will be collected. If Atchison is obliged to accrue as taxable income in 1948 and 1949 interest due for 1939, 1940, and 1941 for which no corresponding tax deduction is or was available by Gulf or the System, there will be a tax burden upon the parent not offset by a tax deduction at any time to the subsidiary. Gulf has paid income tax for 1948 and 1949 upon these earnings and the respondent would tax these amounts again in the same years to Atchison. This is the "double tax" referred to in correspondence appearing in our stated findings of fact.

The decision of Atchison's and Gulf's president was based upon several factors. Taxsaving was one and possibly his decision might be justified if that were the only factor. We need not decide this point for it is evident that there were other considerations which would make the action at least desirable aside from the tax effect. It was evident that if Atchison took Gulf's earnings as interest it would become necessary to loan the money back as capital advances on which more interest would become due. Gulf had need of money for projected improvements and betterments such as installing automatic block signals on many miles of its track which were not thus protected against accident and for buying or constructing a new line into Dallas from Fort Worth or from the north which was considered urgent and would require funds. Gulf had operated at a loss prior to 1942, and the earnings in the war years were believed to be due to war traffic and to be abnormal. The earnings in 1947 appeared to be due to an unusual movement of oil and of wheat for export through southern ports and were not believed to indicate a continuing activity and continuing earnings. These considerations are borne out by the fact that Atchison found it necessary to make additional capital advances to Gulf in the taxable years and afterward. If the interest arrears had been collected, those advances would have had to be increased.

This decision was fully justified by the facts that Gulf was insolvent, owed interest arrearages of over $20 million, was 8 or 9 years in arrears and there was little prospect at that time that future earnings would

permit eventual payment. A similar situation existed in *Chicago & North Western Railway Co.*, 29 T.C. 989 (1958), where we held that the parent corporation was not required to accrue interest due from an insolvent subsidiary which had no prospect of paying arrearages within a reasonable time.

There is no question of the authority of Atchison's and Gulf's president to make this decision effective in the taxable years and certainly the action was confirmed in 1953 by the formal forgiveness of the entire amount of arrearages. In the case of *Society Brand Clothes, Inc., supra,* an oral arrangement was considered sufficient authority for nonaccrual.

We conclude that Atchison was not required to accrue earnings of Gulf as additional interest income as determined by the respondent. In view of this conclusion respondent's alternative argument that at least $1,500,000 should be accrued in 1949 for interest arrearages is without merit.

In view of conceded issues,

*Decision will be entered under Rule 50.*