MINERS NATIONAL BANK OF WILKES-BARRE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65661.   Filed October 14, 1959.

*Jules G. Korner III, Esq.*, for the petitioner.
*Christopher J. Ray, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax of $16,993.73 for the year ended December 31, 1954.

The only question for decision is whether the Commissioner properly determined that $75,563.04 was a reasonable addition to petitioner's reserve for bad debts in 1954.

All of the facts are stipulated, are so found, and the stipulation together with the attached exhibits are included herein by reference.

Petitioner is a corporation organized and existing under the National Banking Laws, with its principal office in Wilkes-Barre, Pennsylvania.  Petitioner's Federal income tax return for the year 1954 was filed with the director of internal revenue, Scranton, Pennsylvania.

For Federal income tax purposes, petitioner for the year 1954 carried on its books a reserve for bad debts, and had elected to make annual additions to said reserve under the system or formula known as the 20-year moving loss average ratio, as provided by respondent in his Mim. 6209, 1947-2 C.B. 26.

During the year 1954, as well as in prior and subsequent years, petitioner had outstanding certain loans made or purchased by it, secured by first mortgages on real estate, which loans were insured by the Federal Housing Administration under the provisions of Title II of the Federal Housing Act, 12 U.S.C. section 1707 *et seq.*, and specifically under the provisions of sections 203 and 204 of the Act, 12 U.S.C. sections 1709 and 1710.  The loans are hereinafter referred to as Title II loans.  On December 31, 1954, petitioner had Title II loans in the amount of $3,447,051.99 outstanding.

In the event of a default on the part of a mortgagor whose loan is insured under section 203 of the Housing Act, *supra*, the mortgagee or lender, such as this petitioner, has two choices after foreclosing upon the property:

(a) He may retain title to the foreclosed property and recoup his loss on the loan from the property, if he can; or

(b) He may convey the foreclosed property to the FHA under the above-cited insurance provisions, and be compensated for his loss.

In the event the mortgagee invokes said insurance provisions, he will be compensated as follows by the FHA:

(a) He will receive FHA "Mutual Mortgage Insurance Fund" debenture bonds, unsecured, in a total face amount equal to the unpaid principal amount of the mortgage plus certain expenses, adjusted as provided in 12 U.S.C. section 1710, as amended, to the nearest $50, the difference to be paid to the mortgagee in cash. These debentures are fully and unconditionally guaranteed by the United States, as expressed on the face of the debenture. Such debentures will bear the date when foreclosure proceedings under the mortgage are instituted, and will bear interest at a rate determined by the Federal Housing Commissioner, with the approval of the Secretary of the Treasury, but not to exceed 3 per cent. Such debentures are subject to call at the option of the FHA. Debentures issued prior to August 2, 1954, were limited to mature 3 years after the first day of July following the maturity date of the respective mortgage which had defaulted. Debentures issued after August 2, 1954, mature 20 years from the date of foreclosure proceedings on the respective mortgage for which they are issued.

(b) The mortgagee will receive "certificates of claim" for additional costs and expenses incurred by him by reason of the default of the mortgagor which are not covered in the face amount of the debentures which are issued, as provided in 12 U.S.C. section 1710, as amended. Said certificates of claim bear interest at 3 per cent per annum, but said interest, together with the principal amount of said certificates, is payable only if, and to the extent that, the FHA is able to liquidate the mortgaged property for an amount in excess of the total amount of: The face amount of debentures; the interest paid or payable thereon; and the amount of cash adjustment paid on account of the respective defaulted mortgages. Said certificates, if paid at all, are payable only upon the complete liquidation of the property by the FHA including the liquidation of any new mortgage taken by the FHA in connection with the resale of the property by it.

A call was issued on March 31, 1954, by the FHA for redemption on July 1, 1954, at par plus accrued interest, of all of its callable debentures which include Title II debentures. (19 Fed. Reg., 1782.)

Regulations promulgated by the FHA under the provisions of Title II of the National Housing Act provide, *inter alia*, that in order to be eligible for insurance coverage under the Mutual Mortgage Insurance Fund, any mortgaged property which a mortgagee seeks to convey to the FHA under said insurance provisions, in exchange for said debentures and certificates of claim, must be in good condition, ordinary wear and tear excepted. In the event the property has suffered damage by fire, flood, earthquake, tornado, or waste, which has not been repaired, the FHA will refuse compensation to the "insured" mortgagee.

The said debentures, known as "Mutual Mortgage Insurance Fund" debenture are transferable, and are traded through security houses on an "over-the-counter" basis. The prices at which such debentures sell will vary, depending upon the rate of interest and the maturity date. Said debentures will usually sell in the market at a price which will produce a yield approximately equal to the current yield available upon United States Treasury obligations of comparable maturity. For example, if United States Treasury obligations with a maturity date of 1977 are selling on the market so as to produce a yield of 3.75 per cent, Mutual Mortgage Insurance Fund debentures of 1977, carrying an interest rate of 2.75 per cent, will sell at an approximate price of 86, so as to produce an equivalent yield. During the years 1953 through 1957, Government bonds of roughly comparable interest rate and maturity traded in the market place in a bid range between 108.9375 and 85.3125. Mutual Mortgage Insurance Fund debentures are not always worth face value in the market.

There is no market for the certificates of claim.

The Title II insurance provisions of the National Housing Act, *supra*, have been in force since 1934 (12 U.S.C. secs. 1709 and 1710). From that time through June 30, 1956, the FHA had received claims from mortgagees involving 23,148 properties, for debentures in the total amount of $400,321,599. Of such debenture claims, representing mortgage loans which had defaulted, the FHA had issued or authorized issuance of $352,318,299 of debentures, and the balance were still under investigation.

During the same period ending June 30, 1956, in connection with defaulted Title II loans, the FHA had actually issued certificates of claim in the total amount of $10,881,453.29, as partial compensation for losses of insured mortgagees. Of this amount, $4,288,720.06 were certificates issued on properties which the FHA had not yet resold, so that it was unknown whether or not the mortgagees would recover anything on account of these certificates. Of the larger amount of $6,592,733.23 of certificates issued in connection with properties which the FHA had resold, however, $4,484,729, or 68.03 per cent, had either

been canceled or were to be canceled by the FHA, meaning that the mortgagee-holders of such certificates had recovered, and would recover, nothing on account of them.

During the time that petitioner has had Title II loans in its portfolio 8 of them have defaulted, and petitioner has claimed and received compensation under said Title II insurance provisions, in debentures, cash, and certificates of claim. The grand total of certificates of claim received by this petitioner in such insurance settlements was $5,836.51. Such amount of certificates represented actual out-of-pocket loss or expense by petitioner in each respective case for items such as foreclosure costs, legal fees, conveyance costs, and maintenance expense. Petitioner has recovered only $550.82 on account of such certificates; the rest have proved to be worthless, a loss of $5,285.69, or 90.58 per cent.

In computing its 20-year moving loss average ratio for the year 1954 under the provisions of respondent's Mim. 6209, *supra*, petitioner failed to include in its total of loans outstanding at the end of each year the amount of Title II insured loans which it then held. With the loss factor obtained from that computation, however, petitioner computed the addition to its bad debt reserve for the year 1954 by applying said factor to petitioner's gross loans outstanding at the end of 1954, including Title II loans. In determining the deficiency of $16,993.73, which is in issue here, respondent has held that petitioner's Title II loans are to be excluded both from the computation of its loss factor in the base period and also from the computation of the allowable addition to the bad debt reserve for 1954, the year in question. The alleged deficiency in this case is based upon the respondent's determination that the mortgage loans made by banks under Title II of the National Housing Act, are to be eliminated from prior years' accounts in computing percentages of past losses, also from current year's loans in computing allowable deductions for additions to the reserve, because the Commissioner has determined that such Title II FHA loans are, for the purposes of paragraph 4, Mim. 6209, *supra*, to be considered 100 per cent Government guaranteed loans.

For some reason the parties have attempted to confine the Court to the very narrow question of whether the Commissioner properly interpreted his own Mim. 6209, 1947-2 C.B. 26, by determining that for the purpose of that mimeograph FHA Title II loans were in fact "100% Government guaranteed loans."

We think this is not proper. Mim. 6209 does not have the effect of law and, certainly, neither do individual rulings under it have the effect of law. The fundamental question still is whether petitioner has proven error in the Commissioner's determination in this case.

In making his determination herein that "[t]he amount of $75,563.04 is deemed to represent a reasonable addition to the reserve for bad debts for the year 1954," the Commissioner subtracted, in the computation under Mim. 6209, FHA Title II loans in the amount of $3,447,051.99. In so doing, the Commissioner says in argument that he was simply following his interpretation of paragraph 4 of the mimeograph. Paragraph 4 provides as follows:

In computing the moving average percentage of actual bad debt losses to loans, the average should be computed on loans comparable in their nature and risk involved to those outstanding at the close of the current taxable year involved. Government insured loans should be eliminated from prior year accounts in computing percentages of past losses, also from the current year loans in computing allowable deductions for additions to the reserve. Losses not in the nature of bad debts resulting from the ordinary conduct of the present business should also be eliminated in computing percentages of prior losses.

The Commissioner has interpreted this paragraph in Rev. Rul. 57–210 1957–1, C.B. 94, as follows:

Regulations of the Federal Housing Administration for mutual mortgage insurance under section 203 of the National Housing Act, *supra*, covering loans made by banks under Title II of that Act, provide that upon default of payments by a mortgagor, the mortgagee at his election has the right to receive the guaranteed Government debentures for the full amount of the unpaid mortgage principal following foreclosure and conveyance of the property to the Federal Housing Commissioner, and that these debentures are accepted in payment of premiums by the Federal Housing Administration, the same as cash. A call was issued on March 31, 1954, by the Federal Housing Administration for redemption on July 1, 1954, at par plus accrued interest, of all of its callable debentures which includes Title II debentures.

Accordingly, it is held that mortgage loans made by banks under Title II of the National Housing Act, *supra*, as amended, known as Title II F.H.A. loans, are considered to be 100 percent Government guaranteed loans for the purposes of Paragraph 4, Mimeograph 6209, *supra*.

Petitioner argues that the Commissioner's determination should be upset because the question "is simply whether respondent made a mistake on a question of fact in determining that Title II loans are 100% insured when, in fact, it is not true."

As we have indicated above, the question is much broader.

Section 166(c), I.R.C. 1954, provides:

RESERVE FOR BAD DEBTS.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

This same provision, without substantial change, appeared in section 23(k)(1) of the 1939 Code.

In administering these sections of the Code so far as banks situated like petitioner are concerned, the Commissioner issued Mim. 6209, providing for a bad debt reserve by utilizing a 20-year moving loss average ratio. Petitioner has taken advantage of the provisions of

the mimeograph, but now complains that the Commissioner has not properly followed his own mimeograph.

With respect to Mim. 6209 we said in *Union National Bank & Trust Co. of Elgin*, 26 T.C. 537, 543—

In *C. P. Ford & Co., Inc.*, 28 B.T.A. 156, 158, 159, this Court pointed out that if a taxpayer chooses to use the reserve for bad debt method of dealing with its bad debts, he subjects himself to the reasonable discretion of the Commissioner. We pointed out, further, that the statutory provision, referring to the discretion of the Commissioner, seems to have placed strong emphasis upon the presumption that the Commissioner's exercise of his discretion in allowing or disallowing an addition to a bad debt reserve is reasonable. Ordinarily, at any rate, the Commissioner's determination is prima facie correct and the taxpayer has the burden of proving error in the Commissioner's determination.

In this case petitioner has introduced no evidence showing in any way what the petitioner's bad debt experience has been, the previous additions to the bad debt reserve or their relationship to the claimed addition to the reserve for 1954. In short, the Court is given no basis for determining whether the Commissioner's determination in this case was capricious or resulted from an abuse of discretion. So far as the record goes the Commissioner treated the FHA Title II loans held by petitioner the same as he treated such loans held by other banks. Whether such loans were in fact "100% Government guaranteed" is beside the point. As we see it, in view of the characteristics of such loans and the experience of petitioner with such loans as set forth above, we cannot say that the Commissioner abused his discretion in eliminating them in determining the allowable addition to petitioner's bad debt reserve for 1954.

We rest our holding, not on the narrow ground of whether or not FHA Title II loans are "100% Government guaranteed," but on the broader ground that petitioner has not shown that the Commissioner in this case unreasonably exercised the discretion vested in him by law.

*Decision will be entered for the respondent.*