ZIONS FIRST NATIONAL BANK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zions First Nat'l Bank v. Commissioner
Docket No. 386-72
United States Tax Court
T.C. Memo 1974-210; 1974 Tax Ct. Memo LEXIS 109; 33 T.C.M. (CCH) 941; T.C.M. (RIA) 74210; August 13, 1974, Filed. J. Jay Bullock, for the petitioner Ralph W. Jones, for the respondent FAY
MEMORANDUM OPINION FAY, Judge : Respondent has determined a deficiency in petitioner's Federal income tax for the calendar year 1968 in the amount of $23,998.99. This case was submitted with a full stipulation of facts under Rule 122 of the Tax Court Rules of Practice and Procedure.
*110 The sole issue for our determination is whether respondent has abused the discretion vested in him by section 166(c) of the Internal Revenue Code of 1954, [1] by denying petitioner certain amounts as an addition to its reserve for bad debts for the year 1968. All of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, Zions First National Bank (hereinafter Zions), was, at the time of the filing of the petition herein, a National Bank incorporated under the laws of the United States. Its principal place of business was at Salt Lake City, Utah. Petitioner filed U.S. Corporation Income Tax Returns for the calendar years 1966, 1967 and 1968 with the district director of internal revenue, Salt Lake City, Utah. Zions maintained a reserve method of accounting for its bad debts. It elected to compute the additions to such reserve pursuant to the provisions of Rev. Rul. 65-92, 1965-1 C.B. 112, commencing with the taxable year 1965. *111 The dollar balance of Zion's reserve, as of December 31, 1964, was less than 2.4 percent of eligible loans outstanding at that time. [2] The amount of the deficiency in petitioner's reserve was $1,965,836.50. In computing the addition to its bad debt reserve for 1965, petitioner included, pursuant to the applicable revenue ruling, 2.4 percent of the increase in its loans outstanding at the end of the taxable year 1965 over the amount of loans outstanding at the end of the taxable year 1964. The amount included in the computation was $62,657.85. For the taxable years ended December 31, 1964, 1966, 1967 and 1968, petitioner had outstanding eligible loans in the amounts of $103,490,300.54, $107,579,961.07, $101,991,187.88 and $122,217,642.01, respectively. For the taxable years ended December 31, 1966, 1967 and 1968, petitioner charged off on its books net bad debts in the amounts of $673,812.32, $664,440.84 and $192,734.22, respectively. These amounts were likewise reflected in its tax returns for the appropriate years. In accordance with the formula prescribed by the respondent *112 in Rev. Rul. 65-92, supra, Zions computed the additions to its reserve for bad debts in the years 1966 and 1967 as follows: [3] 1966 net bad debts charged to reserve (hereinafter referred to as factor 1)
$673,812.32
1/10 of reserve deficiency or1/10 of $1,965,836.50 (hereinafter referred to as factor 2)
196,583.65
Amount attributable to increase in outstanding loans (hereinafter referred to as Factor 3)
Current eligible loans
$107,579,961.07
Less 12/31/64 eligible loans
103,490,300.54
Increase
$ 4,089,660.53
2.4%of increase
$ 98,151.85
Less increase claimed in 1965
[4] 62,657.85
Factor 3
35,494.00
Totalof Factors 1, 2, and 3
$905,889.97
Limita on
.8% of eligible loans
$860,639.68
Amount in excess of Limitation
$45,250.29 1967 net bad debts charged to reserve (hereinafter referred to as Factor 1)
$664,440.84
1/10 of reserve deficiency or 1/10 of $1,965,836.50 (hereinafter referred to as Factor 2)
196,583.65
Amount attributable toincrease in outstanding loans (hereinafter referred to as factor 3)
Current eligible loans
$101,991,187.88
Less 12/31/64 eligible loans
103,490,300.54
Increase
($ 1,499,112.66)
2.4% of increase
o
Less increase claimed in 1965
o
Factor 3
o
Total of Factors 1, 2, and 3
$861,024.49$ Limitation
.8% of eligible loans
$815,929.40
amount in Excess of limitation
$ 45,095.09
*113 In 1968 petitioner computed the addition to its reserve for bad debts following the guidelines offered by respondent. Included in the addition to its reserve, however, were the amounts which had previously been denied in 1966 and 1967 as being in excess of the .8 percent of eligible loans limitation. Respondent, in his statutory notice of deficiency, dated November 5, 1971, disallowed the inclusion of such excess from 1966 and 1967 as an addition to Zions' bad debt reserve in 1968. The question we are being asked to determine is whether respondent has abused his discretion in denying Zions certain amounts as additions to its reserve for bad debts for the year 1968. Section 166(a) governs, in general, deductions for bad debts. If a debt becomes worthless or, under certain *114 circumstances, partially worthless, a deduction will be allowed to the taxpayer pursuant to section 166(a). Section 166(c) provides that "in lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts." A taxpayer who avails himself of the reserve method of accounting for bad debts subjects each year's addition to such reserve to the discretion of the Commissioner. Section 166(c); American State Bank v. United States, 279 F.2d 585 (C.A. 7, 1960), certiorari denied, 364 U.S. 881 (1960). Congress has provided respondent great latitude in its express statutory grant of discretion contained in section 166(c). Merchants Industrial Bank v. Commissioner, 475 F.2d 1063 (C.A. 10, 1973), affirming a Memorandum Opinion of this Court; Patterson v. Pizitz, Inc., 353 F.2d 267 (C.A. 5, 1965), certiorari denied 383 U.S. 910 (1966); Krim-Ko Corp., 16 T.C. 31 (1951). Therefore, additions to the reserve are justified only when the Commissioner is satisfied that such additions are reasonable. Section *115 166(c); Merchants Industrial Bank v. Commissioner, supra.A taxpayer who challenges a determination by the respondent that certain additions are excessive, must bear the burden of establishing that the respondent abused his discretion, by acting in an arbitrary or unreasonable manner. Merchants Industrial Bank v. Commissioner, supra; Business Development Corp. of No. Carolina v. United States, 428 F.2d 451 (C.A. 4, 1970); First National Bank in Olney, 44 T.C. 764 (1965); affd. 368 F.2d 164 (C.A. 7, 1966). Petitioner here has not met this burden. Pursuant to the discretion conferred on respondent by section 166(c), guidelines have been issued in the form of Rev. Rul. 65-92, 1965-1 C.B. 112, applicable for the years in question here, to assist banks in computing additions to their bad debt reserves. This ruling was promulgated to provide banks with a uniform percentage for computing annual additions to such reserves. Rev. Rul. 65-92, reads, in pertinent part, as follows: * * * SEC. 3. UNIFORM RESERVE RATIO. In lieu of reserve computations made through the use of a loss experience *116 factor determined on an individual basis as provided in section 7 of this Revenue Ruling, a bank will be allowed deductions for additions to its reserve for bad debts until the reserve equals 2.4 percent of loans outstanding at the close of the taxable year, subject to the exceptions and limitations prescribed in sections 4, 5, and 6 of this Revenue Ruling. SEC. 4. RESERVE LESS THAN UNIFORM RATIO. If the dollar balance of a bank's reserve, as of the close of its taxable year immediately preceding the year of the change, is less than 2.4 percent of loans outstanding at such time, the amount of the difference (referred to herein as the deficiency in the reserve) may be included in the bank's annual addition to the reserve in an amount not exceeding one-tenth of the deficiency in the reserve, commencing with the year of the change. Such amount need not be added in any specific taxable year but not more than one-tenth of the deficiency will be permitted in any one year. A bank computing its annual reserve addition under this section will also be permitted to include in such addition an amount equal to net bad debts charged to the reserve during the year. Further, it will be permitted *117 to include in such addition 2.4 percent of the increase in its loans outstanding at the end of the taxable year over loans outstanding at the end of the year preceding the year of change, to the extent that a reserve addition with respect to such increase has not been taken in a prior year. The sum of the foregoing amounts, however, may not exceed an amount sufficient to increase the reserve to 2.4 percent of outstanding loans at the end of the taxable year. Thus, if a decrease in a bank's year-end outstanding loans has resulted in a reserve ratio in excess of 2.4 percent, no addition to the reserve would be permitted for that year. If a bank changes to the reserve method of accounting, it shall be treated, for purposes of this section, as having a reserve of zero for the taxable year immediately preceding the year of the change. SEC. 5. RESERVE EXCEEDING UNIFORM RATIO. If the dollar balance of a bank's reserve, as of the close of its taxable year ending in 1964, exceeds 2.4 percent of loans outstanding at such time, the addition to the reserve in any taxable year shall not increase the reserve above the greater of (i) such dollar balance, or (ii) 2.4 percent of loans outstanding *118 at the close of the taxable year. Thus, a bank which has reserves exceeding 2.4 percent of outstanding loans may maintain the dollar balance of its reserve by making additions to its reserve equal to the net amount of bad debts charged to the reserve during the year. Notwithstanding the preceding rules of this section, if the amount of loans outstanding at the close of the taxable year is less than the amount of loans outstanding at the close of the taxable year ending in 1964, the addition to the reserve shall not increase the reserve at the close of the taxable year to a percentage of outstanding loans which is larger than the percentage which the reserve bore to outstanding loans at the close of the taxable year ending in 1964. SEC. 6. MAXIMUM ANNUAL RESERVE ADDITION. Notwithstanding the provisions of section 4 and 5 of this ruling, the addition to the reserve that a bank will be permitted in a taxable year through the use of the uniform reserve ratio shall not exceed an amount equal to 0.8 percent of loans outstanding at the end of the taxable year, or an amount sufficient to bring the reserve to 0.8 percent of loans outstanding at the end of the taxable year, whichever *119 amount is greater. * * * To clarify certain questions concerning the application of the formula prescribed in Rev. Rul. 65-92, supra, Rev. Rul. 66-26, 1966-1 C.B. 41, was issued. Certain passages of this guideline are helpful to a determination of the issue before us: (8) The order in which the factors which make up the annual reserve addition should be claimed is: [5]
1. Net bad debts charged to the reserve; 2. An amount equal to one-tenth of the reserve deficiency; and 3. An amount attributable to any increase in outstanding loans. A bank is not required to take as a tax deduction its maximum permissible annual reserve addition for each taxable year, and unused portions of the above factors may be used in a subsequent year. The use of such portions in a later year would, however, be subject to the applicable limitations of Revenue Ruling 65-92 governing the amount of the reserve addition in such later year. There is *120 no requirement that the reserve deficiency be used up within a 10-year period. The one-tenth additions relating to the deficiency may be taken over a period in excess of 10 years. (9) The maximum limitations in section 6 of Revenue Ruling 65-92 are overall limitations not to be exceeded under any circumstances. Section 6 would apply only in a situation where the proposed reserve addition as computed under either section 4 or 5 of Revenue Ruling 65-92 is greater than 0.8 percent of outstanding loans. If the reserve addition as determined under either section 4 or 5 of the Ruling is not greater than 0.8 percent of outstanding loans, section 6 of the Ruling is not applicable and the lesser amount must be used. Petitioner's additions to its bad debt reserve for 1966 and 1967, as computed in accordance with the formula prescribed by the revenue ruling, exceeded in each case the .8 percent eligible loans limitation. [6] See section 6 of Rev. Rul. 65-92 supra. The excess amounts were not allowed to Zions as part of the addition to its bad debt reserve in those years, not is there a dispute here that they should have been included.[7] Petitioner *121 asserts, however, that under the formula, it may carry over the amounts denied in 1966 and 1967 to the year 1968,[8] computing the addition to its bad debt reserve as including the excess amounts. Respondent, on the other hand, interprets the applicable revenue ruling differently. Respondent contends that under the facts presented here an inclusion of the denied amounts in the year 1968 would be in contravention of the applicable formula. Therefore, respondent has exercised the discretion vested in him by statute (section 166(c)) and disallowed the excess amounts from 1966 and 1967 as part of the addition to petitioner's bad debt reserve in 1968. Although both petitioner and respondent have attempted to narrow *122 the question presented here to one of interpretation of the formula set forth in Rev. Rul. 65-92, supra, we view the formula as advisory only. [9]Merchants Industrial Bank v. Commissioner, supra; cf. First Commercial Bank, 45 T.C. 175 (1965). The ultimate issue for determination is the correctness of respondent's action in disallowing the addition to Zions' bad debt reserve in 1968, viewed in light of section 166(c), not the provisions of Rev. Rul. 65-92, supra. Under the facts before us, we hold that respondent has acted reasonably and has not abused the discretion granted to him by statute in denying petitioner's inclusion of certain amounts in the computation of the addition to its bad debt reserve for 1968. In interpreting the formula before us, respondent maintains that the excess amounts or "unused portions" (see Rev. Rul. 66-26, *123 supra, at 43) from 1966 and 1967 are attributable to the specific factors which make up the addition to the reserve. Further, respondent contends that the characterization of the "unused portions" as specific factors is made by reversing the order in which the three factors are initially computed in determining the amount of the addition to the bad debt reserve. [10] We think this is a reasonable application of the formula. Respondent's computations of petitioner's additions to its reserve for the years 1966 and 1967, including characterizations of the "unused portions", are as follows: 1966
1967 Factor 1
$673,812.32
$664,440.84
Factor 2
186,827.36
151,488.56
Factor 3
-0-
-0-
Total
$860,639.68
$815,929.40
.8% of eligible loans
$860,639.68
$815,929.40
Unused Portions
Factor 2
$9,756.29
$45,095.09
Factor 3
35,494.00
-0-
Total
$45,250.29
$45,095.09
*124 In 1968 Zions' eligible loans increased to $122,217,642.01 and its net bad debt charge off decreased to $192,734.22. The computation for the addition to its bad debt reserve, in accordance with Rev. Rul. 65-92, (exclusive, however, of any application of the amounts in excess of the .8% of eligible loans limitation from 1966 and 1967 would be as follows: 1968
Factor 1
$192,734.22
Factor 2
196,583.65
Factor 3
Current eligible loans
$122,217,642.01
Less 12/31/64 eligible
103,490,300.54
loans
$ 18,727,341.47
2.4% of increase
449,456.20
Less increase claimed in 1965
n11 (62,657.85)
Factor 3 [11]
386,798.35
Total
$776,116.22
Limitation
.8% of eligible loans
$977,741.14
Amount in excess of limitation
-0-
Excess of overall limitation over total of factors 1, 2 and 3
$201,624,92
Respondent, in disallowing the carryover to 1968 that Zions advocates, states that petitioner has taken, in 1968, the maximum allowable for factors 2 and 3 in that year. See Rev. Rul. 65-92, supra *125 and Rev. Rul. 66-26, supra, which are clear in that no more than the maximum permissible amount for any one of the factors may be used in the computations for any one year. Respondent maintains that since the "unused portions" from 1966 and 1967 are, as previously indicated, specifically allocable to factors 2 and 3 they may not be carried forward to 1968, a year in which the maximum amount of these factors has already been computed. Respondent maintains that this interpretation of Rev. Rul. 65-92, supra, is correct regardless of the fact that the use of the formula produces an excess in the amount of the .8% eligible loans limitation over the total of factors 1, 2 and 3. We find respondent's position to be reasonable. We do recognize, however, that under the applicable revenue ruling Zions could have structured its computations to determine the additions to its bad debt reserve in 1966 and 1967 in a manner which would have achieved a more favorable result here. Zions could have merely reduced the amount taken for factor 1 in each of the years 1966 and 1967. See Rev. Rul. 66-26, supra, and Rev. Rul. 70-124, 1970-1 C.B. 38, *126 which indicate that the maximum amount allowable of any of the factors need not be taken in any one year and may be carried forward to successive years as an "unused portion" of the particular factor to which it relates. This recomputation would have allowed the full amount of both factors 2 and 3 to be taken in each of the two years without affecting the total addition to the bad debt reserve in either year. The "unused portions" would, therefore, have been specifically allocable to factor 1 and subsequently included in the addition to the reserve for bad debts in the year 1968. See Rev. Rul. 70-124, supra. Although it appears from the record that Zions had ample time to effect a restructuring of its computations it did not do so. Under the facts before us, we do not see fit to restructure these computations. Furthermore, following respondent's guidelines, the "unused portions" of factors 2 and 3 will not be irretrievably lost as part of the additions to Zions' bad debt reserve. Both parties agree on brief that the "unused portions" of factor 2 will eventually be part of Zions' computations of additions to its bad debt reserve. See Rev. Rul. 66-26, *127 supra, which states that factor 2 may be taken over a period greater than 10 years. The "unused portions" of factor 3 from 1966 will, for all practical purposes, be taken in the year in question here, 1968. As the $35,494.00 factor 3 amount from 1966 was not deemed to be taken in 1966, the amount will not reduce the factor 3 amount for 1968. [12] Accordingly, the "unused portions" from both 1966 and 1967 can be included in the computations of additions to Zions' bad debt reserve in forthcoming years. Therefore, under the facts before us, we hold that Zions has not shown that respondent's determination was unreasonable, arbitrary, or an abuse of the discretion vested in him by statute. [13]
Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise specified. ↩
2. As to what constitutes eligible loans see Rev. Rul. 68-630, 1968-2 C.B. 84↩. 3. The figures presented here are altered somewhat from those shown on petitioner's Federal income tax returns for 1966 and 1967. This is due to certain adjustments made by respondent and agreed to by petitioner. ↩
4. The formula provides that factor 3 amounts taken in prior years' computations of the addition to the bad debt reserve be subtracted from the computation of factor 3 in subsequent years. ↩
5. As previously indicated in the facts of this opinion, the three factors which make up the annual reserve addition will be referred to individually as factor 1, factor 2, or factor 3, respectively. ↩
6. The excess amounts were $45,250.29 in 1966 and $45,095.09 in 1967. ↩
7. The .8% eligible loans limitation has been held to be a proper exercise of the respondent's discretion. See Merchants Industrial Bank v. Commissioner, 475 F.2d 1063↩ (C.A. 10, 1973), affirming a Memorandum Opinion of this Court. 8. As will be shown, for the year 1968 the computation for the addition to Zions' bad debt reserve did not reach the .8% of eligible loans limitation. ↩
9. The ensuing discussion of the formula and the revenue rulings which clarify it, is strictly for the purpose of determining the reasonableness and correctness of respondent's actions in the matter before us and should not be interpreted as a reflection of the propriety of the formula. ↩
10. Respondent relies on Rev. Rul. 66-26, 1966-1 C.B. 41↩, to emphasize that the three factors which make up the amount of the addition to the bad debt reserve are computed in precise order. Therefore, he maintains, the reverse order is used in determining the characterization of the "unused portions". See also Mutzel, "Bad debt probelms of commercial banks", Tulane Tax Institute, Sixteenth Annual, 718, 729, 730. (1966) 11. There would be no reduction for factor 3 from 1966, as that amount would have been considered an "unused portion". ↩
12. See footnote 11, supra. ↩
13. There is nothing in the record in this case to estasblish that Zions needed a greater addition to its bad debt reserve than was allowed by respondent. Merchants Industrial Bank v. Commissioner, supra.See also First Commercial Bank, 45 T.C. 175 (1965). The burden of proof in this regard rests with petitioner. Welch v. Helvering, 290 U.S. 111↩ (1933).