**FAIRFAX COUNTY WATER AUTHOR-ITY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2612.**

United States District Court
E. D. Virginia,
Alexandria Division.

Sept. 26, 1963.

Carrington Williams, Fairfax, Va., for plaintiff.

Claude V. Spratley, Jr., U. S. Dist. Atty., Alexandria, Va., for defendant.

LEWIS, District Judge.

This is a civil suit for the recovery of federal income taxes and interest paid for the years 1955 through 1958. Jurisdiction is invoked under the provisions of § 1346, Title 28, U.S.C. The case was heard by the Court; the jury was waived.

The questions presented for determination are:

(1) Whether certain frontage charges collected by the Annan-dale Water Company, Inc., from abutting property owners, when and as they became customers, constitute gross income taxable under § 61(a),[1] or nontaxable contributions to capital under § 118(a),[2] of the Internal Revenue Code of 1954; and

(2) Whether the cost basis of meters and related service equipment should be reduced by the amounts received by the taxpayer as service charges, which were characterized as capital contributions and thus not included in gross income.

Most of the evidence was stipulated by the parties, from which the Court finds the following facts.

The plaintiff is a non-profit body politic, incorporated, organized and existing under the Virginia Water and Sewer Authorities Act, § 15–764.1, Virginia Code of 1950. The income taxes and interest herein sued for were paid by the plaintiff as transferee and successor in interest to the Annandale Water Company, Inc., a dissolved corporation.

The plaintiff's transferror, Annandale Water Company, Inc., a privately owned Virginia corporation, was organized in 1946 and was a public service corporation engaged in supplying water in and around the area of Annandale, Fairfax County, Virginia, in accordance with a certificate of public convenience and necessity granted by the Virginia State Corporation Commission. As a regulated utility it was subject to the supervision of the Water and Sewer Division of the Virginia State Corporation Commission. Its rates were on file with and subject to the approval of the State Corporation Commission.

The Annandale Water Company, Inc., in order to meet the public need for water, sometimes constructed water

1. "§ 61. Gross income defined
  "(a) *General definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, * * *."

2. "§ 118. Contributions to the capital of a corporation
  "(a) *General rule.*—In the case of a corporation, gross income does not include any contribution to the capital of the taxpayer"

mains along streets and in residential portions of its service area. At other times it took over a water system installed by a real estate developer and integrated it into its system. In other instances a developer would give Annandale Water Company money to build mains. The Water Company (via independent contractors) installed the mains connecting the several subdivisions then in being and to new subdivisions as and when they were developed, in order to establish an interlocking service.

The mains in the subdivisions were installed at the expense of the developer and deeded to the Water Company. The connecting mains were installed at the expense of the Water Company, part of which expense was recouped by the collection of frontage charges from abutting property owners as and when they became customers.

Customers in the subdivisions were charged a $60.00 service charge for connection to the mains and installation of meters. This money, as collected, was credited on the books of the company as a contribution in aid of construction. Abutting property owners, when and as they became customers, were charged a total of $210.00, $150.00 of which was designated frontage charge and $60.00 of which was designated service charge. Both items, when and as collected, were credited on the books of the company as a contribution in aid of construction.

This method of accounting was required by the Virginia State Corporation Commission.

The water mains in question were reported by the Water Company to the Virginia State Corporation Commission in annual reports which set forth the types of materials of which the mains were made, their value as reported by the Water Company, and the value assessed by the State Corporation Commission for state and local taxation purposes.

The costs of the mains were included in the Water Company's assets and were included in its rate base in computing its rates of return, as approved by the Virginia State Corporation Commission.

The frontage charges, as imposed by the Water Company against abutting property owners when and as they became customers, were approved by the State Corporation Commission and were listed as contributions in aid of construction on the Water Company's balance sheet as submitted to the Commission.

Subdivisions and connecting mains were taxed as real estate by the County of Fairfax, Virginia, in conformity with the rulings and regulations of the Virginia Department of Taxation.

Prior to June 22, 1954, the Water Company did not adjust its depreciation by reducing the claimed basis for meters and service connections by the amounts it received as service charges. It has so done since that date.

Upon these findings, the Court concludes the frontage charge as here collected does not constitute gross income taxable under § 61(a) of the Internal Revenue Code of 1954.

The Commissioner of the Bureau of Internal Revenue determined that frontage charges paid to the Water Company by its customers fell within the statutory definition of "gross income"—a determination which was premised on the ultimate finding that the payments in question constituted a part of the price of services, rendered or to be rendered in the future by the Water Company. He cites Edwards v. Cuba Railroad Company, 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124, and Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286, in support thereof, and says the principles enunciated therein form the foundation for the decision by the Court of Appeals for the Third Circuit in Teleservice Company of Wyoming Valley v. Commissioner, 3 Cir., 254 F.2d 105, which involved facts similar to those herein presented.

The facts in that case are sufficiently different from those here found to require a different conclusion from that here reached.

Here the Water Company was a regulated public utility answerable to a state regulatory agency, operating under a continuing duty to provide water service to the public.

The frontage charge as made was authorized by the State Corporation Commission and there was no refund on termination.

The money, collected as such, was used by the Water Company to pay a part of the cost of installing the mains abutting the land, and was listed on its books as a contribution in aid of construction; and was so accounted for in the annual reports to the Commission.

The frontage charge ran to the abutting land and became effective only upon use of the facility. Once paid there was no further frontage charge to subsequent users.

The charge was the same for all types of land—residential, commercial, industrial.

These water mains, partially paid for by the frontage charges, were carried as capital assets of the Water Company.

Similar charges in aid of construction costs are common to water companies both public and private.

The record further discloses the Water Company was engaged in the business of selling water at approved rates, and in maintaining and servicing the necessary system requisite therefor. The mains, installed by the company (by independent contractors) for which it collected the frontage charge, were required to connect the existing subdivisions and to make service available to new subdivisions and property owners abutting its lines. The cost of the installation was advanced by the company with the knowledge and expectation it would recoup a portion of this capital outlay from the abutting propery owners as and when they became users of the service.

Prior to the decision in Teleservice (3 Cir., 254 F.2d 105), supra, the Commissioner never questioned these frontage charges as contributions in aid of construction. Thereafter he classified these payments as gross income on the premise the record here demonstrates—that the payments were made as a part of the price for services (water).

Such is not the fact. The abutting land owner does not receive a drop of water upon payment of the frontage charge. He only gets the use of the adjacent water main, together with its maintenance and replacement, through which he and his successors may receive water at approved rates for an interminable period. When and as he becomes a customer of the Water Company, he pays a total of $210.00, $60.00 of which the company designates as a charge for meter service and $150.00 of which the company designates as a frontage charge. There is no evidence in this record that the customer has any actual knowledge of this breakdown. He is not billed for either service at any time.

The $60.00 service charge is allowable as a capital contribution within the purview of § 118(a) of the Internal Revenue Code of 1954—so says the Commissioner—to cover the cost of connecting the house to the water main along the street and installing a meter. He contends this portion of the $210.00 charge was paid as a condition precedent to a capital outlay by the Water Company, which is similar to the payments made in Tampa Electric Co. v. Commissioner, 12 B.T.A. 1002, and other utility company cases.

It is hard to rationalize how a part of this $210.00 is gross income and a part a capital contribution when it was all spent for the same purpose. The fact that the frontage charge was not paid as a condition precedent to the installation of the water main is begging the question. The purpose of the installation was the extension of the water system to the subdivision then being developed and to make water service available to all of the property abutting the main. These mains were installed with the expectation and knowledge that the frontage charge, as authorized, would be paid when and as the mains were used to serve the abutting property.

There being no legal distinction in the purpose of the two charges—service and frontage—both will be allowed as a contribution to capital under § 118(a) of the Internal Revenue Code of 1954.

The allowable depreciation of these mains should be adjusted accordingly; that is, the cost basis of the water mains should be reduced in an amount equal to the frontage charges collected.

The taxpayer's contention, that the cash received for service charges prior to June 22, 1954, should not be considered in establishing the basis for the service installation, is without merit. See Commissioner v. Arundel-Brooks Concrete Corporation, 4 Cir., 152 F.2d 225, 162 A. L.R. 1200. In fact, it now so concedes.

The Bureau of Internal Revenue should forthwith recompute the taxes due in accordance with this opinion, and the attorney for the taxpayer should prepare an appropriate order directing the refund of any overpayment of income taxes made for the years in question, submit it to the District Attorney for approval as to form, and it will be accordingly entered.